IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CARLETON GRAIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-13-321-M |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On May 5, 2009, Plaintiff protectively filed an application for a period of disability and disability insurance benefits ("DIB"). He filed an application for supplemental security income ("SSI") on August 27, 2009. In these applications, Plaintiff alleged he became

1

unable to work beginning May 1, 2007. Plaintiff alleged disability due to "knees/feet/tennis elbow/right wrist." (TR 182). He described previous work as a janitor and a sander. (TR 183). Plaintiff has an eleventh grade education, and he was 39 years old when he allegedly became disabled.

The agency determined Plaintiff was insured for the purpose of DIB benefits only through March 31, 2009. (TR 14, 177). Plaintiff stated that he stopped working in June 2006 when a "contract" ended. (TR 182). In September 2009, Plaintiff completed a written function report in which he indicated his activities were restricted by knee pain and limitation of knee movement and that he wore a knee brace. (TR 188-195).

The medical record reflects that Plaintiff underwent a consultative physical examination in March 2007 in connection with a previous disability benefits application. The examiner, Dr. Boucher, conducted a physical examination and noted that Plaintiff described knee pain for about two years for which he had received injections, but he walked without difficulty and exhibited only "some crepitus" with range of movement of his knees. (TR 236-237). The diagnostic assessment was degenerative joint disease with osteoarthritis in both knees and post-traumatic arthritis with loss of sensation in Plaintiff's right thumb and index finger. (TR 238).

In January 2009, Plaintiff complained to his treating Indian Health Center examiner that pain medication was not helping his bilateral knee pain. (TR 265). In May 2009, Plaintiff was evaluated by an orthopedic osteopathic physician, Dr. West. (TR 288). Dr. West noted that MRI testing showed degenerative changes in both of Plaintiff's knees, and

2

Plaintiff was scheduled for a series of synovisc injections. (TR 288-289).

In July, August, and October of 2009, Plaintiff underwent a series of injections and arthroscopic procedures in both knees for continuing pain. (TR 284-287, 295, 297). In December 2009, Plaintiff complained that his left knee "still pops and locks on him at times" and his right knee exhibited some swelling and mild effusion but full range of motion. (TR 319).

In May 2010, Plaintiff underwent full right knee replacement surgery conducted by Dr. West. (TR 326). Physical therapy followed this operation, and in August 2010 Plaintiff's physical therapist noted that Plaintiff's range of motion "continues to improve as well as his tolerance for activities such as sleeping, sitting, and driving. He is walking better and with no assistive device" although he had "severe limitations" with regard to squatting and kneeling. (TR 395). He was discharged from physical therapy to a home exercise program.

In September 2010, Plaintiff underwent full left knee replacement surgery conducted by Dr. West. (TR 567-569). Plaintiff again underwent physical therapy following the operation, and in October 2010 and again in February 2011 Plaintiff's only complaint was that he had "some stiffness" in the knee. (TR 477, 571). Plaintiff's physical therapist noted in February 2011 Plaintiff was discharged for non-compliance but that he had made steady progress in range of motion and strength in his left knee and should be able to continue those gains in a home exercise program. (TR 586-587).

In April 2011, Plaintiff reported he was working on a home exercise program and he still had "some swelling and some pain . . . in both knees." (TR 570). Dr. West noted

3

Plaintiff had no instability, range of motion in both knees of 0 to 100 degrees, and well-healed incisions. (TR 570). Plaintiff was advised to continue the home exercise program, and his prescribed anti-inflammatory medication was changed.

In a hearing conducted on October 26, 2010, before Administrative Law Judge McLean ("ALJ")(TR 23-51), approximately one month after his left knee replacement surgery, Plaintiff testified that he could walk "fine" but could not stoop, kneel, or bend. (TR 40). He could stand for 30 seconds but sitting was difficult because he still had surgical staples in his left knee. He spent most of his days sitting on a couch with an ice pack on his knee or using a rehabilitative continuous motion machine on his knee. He had just begun physical therapy on his left knee. A vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision on November 23, 2011, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 14-22). On February 2, 2013, the Appeals Council issued a notice declining to review this decision. (TR 1-4). Therefore, the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on March 31, 2009. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on March 31, 2009. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Step Three

Plaintiff contends that there is not substantial evidence to support the Commissioner's final decision because Plaintiff's knee impairments satisfied the requirements of Listing 1.02 and therefore the ALJ should have found Plaintiff was disabled at step three of the sequential evaluation procedure. Defendant responds that the medical evidence did not show that Plaintiff's knee impairments satisfied the requirements of Listing 1.02 for the duration set forth in the regulations.

At step one, the ALJ found that Plaintiff met the insured status requirements of the

Social Security Act through March 31, 2009, and he had not worked since his alleged disability onset date of May 1, 2007. At step two, the ALJ found that Plaintiff had severe impairments due to osteoarthritis of both knees. At step three, the ALJ found that Plaintiff's severe impairments were not *per se* disabling under the agency's Listing of Impairments.

The ALJ expressly considered the requirements of Listing 1.02 for major dysfunction of a joint. Addressing the requirements of this listing, the ALJ noted that the listing required medical evidence of "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and . . . involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively as defined in 1.00B2b." (TR 17). The ALJ found that the listing was not met or equaled in Plaintiff's case because "the evidence does not demonstrate that the claimant has the degree of difficulty in ambulating as defined in 1.00B2b." (TR 17).

The regulations define an inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities [and] insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b). Additionally, the inability to ambulate effectively must have lasted or be expected to last for at least 12 months. Id. at § 1.00(B)(2)(a).

At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the

[Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d). Bowen v. Yuckert, 482 U.S. 137, 141 (1987). "[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Id. at 153. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id. at 141. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). An impairment that manifests some, but not all, of a listing's criteria will not establish disability at step three. Id.

Plaintiff refers to evidence in the medical record and Plaintiff's statements and testimony concerning his knee impairments. There is no question that Plaintiff would have difficulty walking for a period of time after his knee replacement surgeries. However, Plaintiff has not demonstrated based on medical evidence in the record that he was unable to walk without the use of hand-held assistive devices that limited the functioning of both upper extremities for 12 months or longer. Plaintiff's physical therapist noted in January 2011, only five months following his second knee replacement surgery, that Plaintiff could walk a flight of stairs and he was not using an assistive device. (TR 586). In February 2011, the physical therapist noted Plaintiff was performing basic personal care independently "without difficulty." (TR 585). Plaintiff was discharged from treatment at that time due to non-compliance, although the therapist noted he had made "[e]xcellent progress" in improving his ability to perform activities of daily living and was "Fully Able" to climb a

7

flight of stairs using only a rail. (TR 586-587). Accordingly, there is substantial evidence to support the ALJ's step three determination.

IV. Evaluation of Treating Physician's Opinion

Plaintiff contends that the ALJ erred in evaluating the opinion of his treating orthopedic specialist, Dr. West. On September 24, 2010, just one week after Plaintiff's total left knee replacement surgery, Dr. West completed a medical source statement concerning Plaintiff's ability to perform work-related activities. (TR 466-471). In this statement, Dr. West, not surprisingly, stated that he did not believe Plaintiff could work an 8-hour day "at this time." (TR 467). He opined that Plaintiff's ability to perform most physical work-related activities was severely limited because of his recent knee replacement operation and that the limitations could persist for six to nine months "pending healing." (TR 471). Dr. West also opined that Plaintiff could continuously operate foot controls with his right foot, indicating that Plaintiff had no functional limitations in that knee. (TR 468).

The ALJ recognized that Dr. West was a treating physician and expressed consideration of Dr. West's medical source opinion in the decision. The ALJ found that the opinion was entitled to "little to no weight" because the opinion was inconsistent with Plaintiff's treating records and with the record as a whole. (TR 20). The ALJ also pointed to Plaintiff's written statement that he could lift ten pounds. (TR 20). The ALJ further reasoned that the determination of whether a claimant is disabled or unable to work is reserved to the Commissioner.

Plaintiff points to diagnostic impressions, MRI findings, and the Plaintiff's knee

8

surgeries. The ALJ's decision correctly summarizes these important medical records. Plaintiff's argument fails to recognize, however, that Dr. West expressly limited his opinion to an uncertain, time period of less than one year "pending healing" and did not express any permanent restrictions on Plaintiff's ability to work. The ALJ properly considered other evidence in the record, including Plaintiff's own statements concerning his abilities. Plaintiff points to a physical therapist's assessment in January 2011, again only a few months after his second knee replacement operation, that he had regained 17% of his functioning in the knee. Plaintiff does not point to any physician's or therapist's opinion that Plaintiff's knee impairments resulted in permanent functional restrictions or any restrictions beyond a normal healing period following the knee replacement operations. Specifically, in the June 2010 assessment by Plaintiff's physical therapist to which Plaintiff points, the therapist noted Plaintiff's statement that he was unable to perform any lifting. (TR 389). The subjective statement is not an assessment of permanent functional limitations. In Dr. West's medical source opinion to which Plaintiff also points, Dr. West indicated Plaintiff could "never" lift any weight at all. (TR 466). But Dr. West provided no medical or clinical findings to support this opinion, and Plaintiff himself stated he could lift ten pounds. (TR 193). The ALJ did not err in finding that Dr. West's opinion was entitled to "little or no" weight in light of conflicting medical and non-medical evidence in the record.

V. RFC Finding and Credibility Analysis

Plaintiff contends that there is not substantial evidence to support the ALJ's RFC finding and that the ALJ erred in analyzing the credibility of Plaintiff's complaint of

9

disabling pain. In challenging the ALJ's RFC finding, Plaintiff relies on Dr. West's medical source opinion. However, as previously discussed and found, the ALJ did not err in giving "little to no weight" to the medical source opinion for reasons stated in the decision and in light of the lack of support for the opinion in the medical and non-medical evidence.

Plaintiff asserts that the record is "replete" with Plaintiff's assertions of pain and therefore the ALJ should not have discounted the credibility of his assertion of disabling pain. The ALJ addressed the credibility issue in the decision, stating that

> [t]he evidence of record does not entirely support the credibility of the claimant's allegations regarding his physical impairments. The claimant was noted to be improving following his surgeries, including normal extension, better strength, and good ambulation. The claimant testified that his pain medication helps for two hours and that he takes it one to three times per day. It was further noted that the claimant is able to perform all necessary daily activities with current motion. . . . The evidence shows that the claimant stopped working prior to his alleged onset date of disability, not because of his alleged disabling impairments, but because "the contract was lost" . . . . Although the work report and earnings record show the claimant was not working, treatment notes indicate that the claimant was self-employed. Specifically, in July 2010 it was noted that the claimant owns his own business, which requires him to be on his feet most of the day with kneeling, squatting, and crawling on a frequent basis. . . . It was further noted in August 2010 that the claimant had some progress in his goal of being able to kneel to work on his stripper and waxing machines for up to two minutes with pain 3/10 or less. . . .

(TR 19).

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their]

10

functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's incredibility, including the claimant's daily activities; the location, duration, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; any treatment other than medications the individual receives or has received for pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 WL 374186, at * 3. See Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

Other factors that may be relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. § 416.929(c)(3)(listing factors relevant to symptoms that may be considered by ALJ).

The ALJ's decision reflects consideration of several of the recognized factors for determining credibility, and those reasons are well supported by the record. In August 2010, Plaintiff's physical therapist noted that his range of motion and strength were improving in his right knee and that he was walking without an assistive device. (TR 395). Dr. West's treatment notes indicate that one month following Plaintiff's left knee replacement surgery he was experiencing no pain or problems. (TR 477). There were no notes indicating problems, and Plaintiff's range of motion continued to improve, over the next two months. (TR 474-476). There are treatment notes in 2011 indicating Plaintiff complained of continuing pain in his left knee, which Dr. West thought might be caused by a "defect in his extensor mechanism." (TR 615). Plaintiff was provided a "short-hinged brace," and Dr.

West recommended MRI testing to assess the knee. (TR 615). However, Plaintiff did not get the MRI testing or a recommended bone scan. (TR 614, 612). In November 2011, Dr. West noted Plaintiff could fully extend his knee although it appeared to be "somewhat weak." (TR 612). Dr. West prescribed pain medication and again recommended MRI and bone scan testing. (TR 612).

Plaintiff takes issue with the ALJ's statement that "[t]aking a medication that causes side effects of the degree alleged is inconsistent with the continued use of this medication. It is the rare case in which a patient must take a medication that causes severe side effects but has no alternative. Generally if the patient is experiencing such side effects the doctor will attempt to remedy this by prescribing an alternative." (TR 18). Plaintiff testified that his pain medication caused a side effect of daytime drowsiness. However, the medical record does not indicate that Plaintiff complained to treating doctors of persistent or severe side effects. Even if the ALJ erred in not clearly tying this reasoning to the medical record, the ALJ provided other reasons well supported by the record for discounting the credibility of Plaintiff's allegation of severe, disabling pain.

Plaintiff also asserts that the ALJ erred in relying on statements in the record indicating that Plaintiff was self-employed as a reason to discount his credibility. In August 2010, Plaintiff's physical therapist noted that Plaintiff was self-employed as a floor stripper and he "need[ed] to be able to squat or kneel to work on machines." (TR 395). The treatment note also reflects Plaintiff's statement that he was unable to work because of limited range of motion in his knees. (TR 395).

13

Nothing in the record indicates that Plaintiff actually worked during the time period that he alleged he was disabled, and the ALJ accurately noted in the decision that "[t]he evidence shows that the claimant stopped working prior to his alleged onset date of disability, not because of his alleged disabling impairments, but because 'the contract was lost.'" (TR 19). Although the ALJ could have articulated her reasoning better, it appears that the ALJ's statements concerning Plaintiff's self-employed status were merely directed to Plaintiff's subjective assessment that he wanted to return to work and was making progress toward that goal. Even if this reasoning was erroneous, however, the ALJ pointed to other medical and non-medical evidence in the record to support the credibility determination, and the error is harmless.

In his Reply brief, Plaintiff contends that his knee impairments and operations satisfied the agency's 12-month durational requirement[1] and that the ALJ erred in failing to find that he was disabled during at least a 19-month period. There is substantial evidence in the record to support the ALJ's step four RFC finding. The 12-month durational requirement, however, "applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). Although the medical record reflects that Plaintiff's knee impairments were severe and that Plaintiff underwent two knee replacement operations in May 2010 and

---

[1] Disability is defined by statute to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

September 2010, there is medical evidence in the record, as found by the ALJ, that Plaintiff's knee impairments did not result in functional restrictions precluding all work activities for any 12-month period of time.

Plaintiff relies, in part, on evidence in the record showing Plaintiff underwent two arthroscopic knee procedures prior to his knee replacement operations. Nothing in the record reflects that these procedures caused disabling functional limitations for extended periods of time. A publicly-available website on health issues provided by the U.S. Government's National Institutes of Health states that although "[f]ull recovery after knee arthroscopy will depend on what type of problem was treated," even with "a more complex procedure" a patient may have to use crutches or a knee brace "for several weeks." http://www.nlm.nih.gov/medlineplus/ency/article/002972.htm. Such a limitation is not inconsistent with the ALJ's RFC finding for a limited range of sedentary work.

There is substantial evidence in the record to support the ALJ's step five determination, including the testimony of the VE, upon which the ALJ relied, concerning the availability of jobs for an individual with Plaintiff's RFC for sedentary work. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and

Recommendation with the Clerk of this Court on or before January 9th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 20th day of December, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE